FANNIE MARTIN, ADMINISTRATRIX, v. GREENSBORO-FAYETTEVILLE BUS LINE.

(Filed 20 November, 1929.)

**Master and Servant D b—In this case held: servant was not acting within scope of employment or about master's business and master was not liable for injuries to third person.**

In order to hold a master responsible for the negligence of the servant in causing an injury to a third person, it is essential that the latter should be acting in the scope of his employment and in the furtherance of the master's business, and in an action against an auto-bus line for damages resulting from the negligence of its driver in running over and killing plaintiff's intestate, a motion as of nonsuit should be entered if the plaintiff's own evidence tends only to show that a bus of the defendant was at the time of the injury being driven by an employee of the garage in which the defendant stored its buses who was returning the bus to the garage after the driver thereof had ridden home in it contrary to the express orders of the defendant and without his knowledge or acquiescence.

APPEAL by plaintiff from *Sink, Special Judge,* at May Term, 1929, of DURHAM.

Civil action to recover damages for an alleged wrongful death occasioned by defendant's bus striking plaintiff's intestate on Main Street in the city of Durham, knocking him down and inflicting injuries from which he died.

The evidence discloses that on 10 October, 1926, Lester Griffin, driver of one of defendant's Greensboro-Fayetteville buses, arrived in Durham at 6:45 p.m., about an hour late, due to heavy traffic on the road; that, after unloading his passengers, he carried the bus to King's garage, where the defendant stores its buses for the night, and asked that one of the tires, which had been punctured, be patched, so that he could leave next morning on schedule time; that Mr. King replied he was too busy to repair the tire—his full force not working on Sunday—and suggested that the bus be taken to Harris' garage for the needed repairs, which was done; that Griffin's wife and child met him at Harris' garage and rode back with him after the repairs had been made; that upon arriving at the storage garage, about 8 p.m., Griffin asked King, who had charge of storing the bus for the night, if he could send him and his family home, as he was about half sick and was not feeling well; that King replied he had no available car, but that he might go in the bus, taking Clarence Bullock, an employee of the garage and a good driver, to bring it back; that in consequence of this suggestion, Bullock got in the bus and rode with Griffin and his family to Griffin's home, when and where the bus was turned over to Bullock by Griffin, and that on his way back to King's garage, Bullock ran into and killed plaintiff's intestate.

The evidence further discloses that Griffin, the regular driver of the bus, was under positive instructions from the defendant not to use the bus after reaching Durham, but to store the same for the night in King's storage garage, and Mr. King was to wire the defendant's manager in Greensboro whenever the bus arrived at his garage later than 6:30 p.m., so that the delay might be investigated; and that the use of the bus from the time it reached the storage garage until its scheduled departure on the following morning was unauthorized, and without the knowledge, consent or acquiescence of the defendant or any of its agents.

From a judgment dismissing the action as in case of nonsuit, the plaintiff appeals, assigning error.

*Bryant & Jones for plaintiff.*
*John W. Hester for defendant.*

STACY, C. J., after stating the case: When it is sought to hold one responsible for the neglect or tort of another, under the doctrine of

*respondeat superior,* at least three things must be made to appear, yea four, and, upon denial of liability, the plaintiff must offer "some evidence which reasonably tends to prove every fact essential to his success" *(S. v. Bridgers,* 172 N. C., 879, 89 S. E., 804). These are:

1. That the plaintiff was injured by the negligence of the alleged wrongdoer. *Hurt v. Power Co.,* 194 N. C., 696, 140 S. E., 730.

2. That the relation of master and servant, employer and employee, or principal and agent, existed between the one sought to be charged and the alleged *tort-feasor. Linville v. Nissen,* 162 N. C., 95, 77 S. E., 1096.

3. That the neglect or wrong of the servant, employee, or agent, was done in the course of his employment or in the scope of his authority. *Ferguson v. Spinning Co.,* 196 N. C., 614, 146 S. E., 597; *Fleming v. Knitting Mills,* 161 N. C., 436, 77 S. E., 309.

4. That the servant, employee or agent, was engaged in the work of the master, employer, or principal, and was about the business of his superior, at the time of the injury. *Gurley v. Power Co.,* 172 N. C., 690, 90 S. E., 943.

It is elementary law that the master is responsible for the negligence of his servant which results in injury to a third person when the servant is acting within the scope of his employment and about the master's business. *Roberts v. R. R.,* 143 N. C., 176, 55 S. E., 509; 8 L. R. A. (N. S.), 798, 10 Ann. Cas., 375. It is equally elementary that the master is not responsible if the negligence of the servant which caused the injury occurred while the servant was engaged in some private matter of his own or outside the legitimate scope of his employment. *Bucken v. R. R.,* 157 N. C., 443, 73 S. E., 137; *Doran v. Thomsen,* 76 N. J. L., 754.

It is further held that the owner of an automobile is not liable for injuries caused by it, merely because of ownership. *Linville v. Nissen, supra.* And it is well settled by numerous decisions, here and elsewhere, that "the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of such neglect or wrong, at the time and in respect to the very transaction out of which the injury arose." *Wyllie v. Palmer,* 137 N. Y., 248; *Doran v. Thomsen, supra; Wilkie v. Stancil,* 196 N. C., 794, 147 S. E., 296; *Grier v. Grier,* 192 N. C., 760, 135 S. E., 852.

In the instant case it could hardly be said that Bullock was the servant of the defendant in bringing the bus back to the storage garage, or that Griffin was acting within the scope of his employment and about the defendant's business, when he took the bus to drive himself and family home. *Cotton v. Transportation Co., ante,* 709. It is univer-

sally held that "the master is not responsible if the wrong done by the servant is done without his authority and not for the purpose of executing his orders or doing his work. So that, if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another, not within the scope of his employment, the master is not liable." *Howe v. Newmarch,* 94 Mass., 49.

Speaking to the subject in *Dover v. Manufacturing Co.,* 157 N. C., 324, 72 S. E., 1067, *Brown, J.,* delivering the opinion of the Court, said: "This doctrine of *respondeat superior,* as it is now established, is a just but a hard rule. The master exercises care in the selection of his servant and retains in his service only such servants as are prudent and trustworthy; the servant in the prosecution of the master's business must of necessity pass beyond his sight and out of his control; and yet the law makes the master liable for the conduct of the servant. The application of this principle without working the greatest injustice to every employer of a servant is made possible only by the limitation established by the courts, that when the servant does an act which is not within the scope of his employment the master is not liable. 'Beyond the scope of his employment the servant is as much a stranger to the master as any third person, and his act in that case cannot be regarded as the act of the master. The rule as it is now established by the later judicial declarations should be strictly held within its defined limits. It is a rule capable of great abuse and much hardship and the courts should guard against its extension or misapplication.' *Holler v. Ross,* 68 N. J. Law, 324."

The decisions in *Misenheimer v. Hayman,* 195 N. C., 613, 143 S. E., 1, and *Freeman v. Dalton,* 183 N. C., 538, 111 S. E., 863, both strongly relied upon by plaintiff, are not in conflict with our present position or with any of the cases above cited. In the first, it is expressly stated that to hold the master liable for the tort of the servant, the plaintiff must show "that the driver of the truck was acting within the scope of his authority and in furtherance of his employer's business," citing in support of the position: *Freeman v. Dalton, supra,* and *Clark v. Sweaney,* 176 N. C., 529, 97 S. E., 474. In the second, the only question presented and decided was that the trial court erred in instructing the jury, "if the plaintiff has satisfied you by the greater weight of the evidence that he was injured by the defendant's automobile, then the burden would be on the defendant to show by the greater weight of the evidence that although he was the owner of the automobile, it was not being used in his business." This was the extent of the decision in *Freeman's case,* and while some expressions in the opinion, not necessary to the decision, may be out of line with the holdings in other cases, *e. g., Wilkie*

*v. Stancil,* 196 N. C., 794, 147 S. E., 296, *Tyson v. Frutchey,* 194 N. C., 750, 140 S. E., 718, *Grier v. Grier,* 192 N. C., 760, 135 S. E., 852, *Reich v. Cone,* 180 N. C., 267, 104 S. E., 530, and *Bilyeu v. Beck,* 178 N. C., 481, 100 S. E., 891, it should be remembered, as pointed out by *Marshall, C. J.,* in *U. S. v. Burr,* 4 Cranch, 470, that "Every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered."

Applying these principles to the facts before us, it would seem that the plaintiff ought not to recover of the defendant.

Affirmed.

ADAMS, J., concurring: I concur in the opinion written by the *Chief Justice,* and take occasion to stress the statement that in *Misenheimer v. Hayman,* 195 N. C., 613, the Court did not hold that the owner of a motor car is liable for injuries caused by it, merely because of his ownership. In that case there was no controversy as to the negligent operation of the truck. The questions were (1) whether the defendant was the owner of the truck; (2) whether at the time of the injury the truck was driven by the defendant's employee; and (3) if it was, whether the employee was then engaged in the prosecution of the defendant's business? The court concluded, on the defendant's motion for nonsuit, that the evidence, while not complete in all respects, was not so meager as to require dismissal of the action as a matter of law.