VERNON BROWN, by His Next Friend, J. S. WEBB, v. JOHN L. WOOD AND DAVID SANDERS.

(Filed 16 September, 1931.)

1. **Principal and Agent C d—Owner of auto is not liable for another's negligence in driving it in absence of proof of agency.**

Where the family-purpose doctrine does not apply, proof of ownership of an automobile does not constitute a prima facie case of liability against the owner for an injury inflicted by another while driving the car, it being necessary that the injured person establish by his evidence the fact of agency and that the agent at the time of the injury was acting within the scope of his employment.

**2. Negligence D b—Acts in aid of injured person are not evidence of admission of liability for the injury.**

The fact that a defendant procures a doctor and takes an injured person to a hospital is not an implied admission of liability to the injured person.

**3. Principal and Agent A a—Evidence held sufficient on issue of whether person causing injury was agent of defendant.**

Where a guest in an automobile upon the highway is injured by the negligence of the driver of another automobile, and the owner of the car causing the injury visits the injured person at the hospital and promises to pay the doctor's bill and provide some money for the injured person's education, and pays him a sum of money and promises to see that "everything was all right," *Held:* although the language might be only an assumption of hospital care and treatment, it is susceptible of a broader interpretation, and is sufficient to be submitted to the jury on the question of an implied admission of agency.

CIVIL ACTION, before *Small, J.,* at January Term, 1931, of PASQUO-TANK.

The plaintiff, a minor, was riding in a car with his uncle, J. S. Webb, on 8 July, 1928. The car in which plaintiff was riding was approaching Elizabeth City. A car owned by the defendant Wood and driven by the defendant David Sanders was approaching from the opposite direction. The evidence tended to show that the car operated by the defendant Sanders undertook to pass a car in front thereof and traveling in the same direction therewith, and in so doing struck the car in which plaintiff was riding, turning it over, and as a result thereof plaintiff suffered serious and permanent injuries, necessitating the amputation of one of his feet. There was ample evidence to the effect that the defendant Sanders was driving the car in a negligent manner.

At the conclusion of the testimony for plaintiff, the trial judge sustained a motion of nonsuit as to defendant John L. Wood, and thereupon issues of negligence, contributory negligence and damages were submitted to the jury as to the defendant Sanders. The issues were answered in favor of plaintiff and damages were awarded in the sum of $1,250.00.

The plaintiff appealed from the judgment of nonsuit as to Wood.

*M. B. Simpson for plaintiff.*
*McMullan & McMullan for defendant, John L. Wood.*

BROGDEN, J. Two questions of law are presented by the record:

1st. Does proof of ownership of a pleasure car constitute a prima facie case of liability against the owner, for injuries resulting from the negligent operation thereof by another?

2d. Is the conversation of defendant Wood with Webb, next friend of plaintiff, competent as evidence of agency of defendant Sanders?

The law answers the first question in the negative. *Reich v. Cone,* 180 N. C., 267, 104 S. E., 530; *Tyson v. Frutchey,* 194 N. C., 750, 140 S. E., 718; *Jeffrey v. Mfg. Co.,* 197 N. C., 724, 150 S. E., 503. The foregoing cases declare the law in this jurisdiction to be, that if a pleasure car is driven by a person other than the owner and the family-purpose doctrine does not apply, then there must be evidence of agency, and that the agent, at the time of the injury, was acting within the scope of his employment, in order to impose liability upon such owner.

The plaintiff, however, insists that the conversation of defendant Wood, the owner of the car, is some evidence of agency to be considered by a jury. This conversation, occurring at the hospital, as detailed by the record, is as follows: "The boy was on the cot. Mr. Wood said: 'He was a poor boy but he wanted to help him out and they would pay the doctor's bill and would get him a limb and fix it so he would have some money to educate himself.' . . . Mr. Wood said it was his car and said he would do what he could to help Sanders out, but said nothing about why Sanders was driving. Mr. Wood gave me a check on a bank which I did not think exists. Wood told me that he would see 'that everything was all right.' He gave me that check and said he would give me some more and do everything he could to see that it was all right. . . . Mr. Wood said he would do all he could to help Mr. Sanders and said he would give Vernon an artificial foot and pay the hospital bills and give Vernon money for his education." . . .

The foregoing evidence was admitted without objection, and hence the element of compromise is eliminated.

It is stated in Cyclopedia of Automobile Law by Blashfield, Vol. 2, page 1795, "that, after a collision between defendant's car and that of plaintiff, defendant, after examining the plaintiff's automobile, told her to have it fixed and he would pay expenses, and later requested her to send the bill to him, could be found by the jury to constitute such an admission as to warrant a finding that the servant driving the car was acting within the scope of his authority." The text is supported by the following authorities: *Jasmin v. Meaney,* 146 N. E., 257; *Dennison v. Swerdlove,* 146 N. E., 27; *Bernasconi v. Bassi,* 158 N. E., 341; *Epperson v. Rastatter,* 168 N. E., 126.

In this State, the fact that a defendant procured a doctor or took an injured person to a hospital and paid the hospital bill is not an implied admission or circumstance tending to impose liability. *Barber v. R. R.,* 193 N. C., 691; 138 N. E., 17; *Norman v. Porter,* 197 N. C.,

222, 148 S. E., 38. Such acts in themselves, the law deems to be a part of neighborliness and an incident of that commendable impulse of benevolence, dramatically portrayed in the parable of the Good Samaritan. It has never been suggested that the fact that the Good Samaritan placed an injured and unfortunate man upon his own beast, pouring wine and oil into his wounds, paying his maintenance charges at the inn, and promising even to give more, if necessary, upon his return, was an implied admission that the agents of the Good Samaritan, in the course of their employment, actually inflicted the injury upon the wounded man found on the Jericho Highway. This idea was referred to by *Clarkson, J.,* in *Barber v. R. R., supra,* when he wrote: "The defendant, not knowing whether it was liable or not, had the humanity to take the plaintiff, who was struck by its engine, to a hospital in Danville and employed Dr. Miller to attend him. It was an act of mercy which no one should hold in any respect was an implied admission or circumstance tending to admit liability."

However, in the case at bar, the defendant Wood promised to see "that everything was all right." It might be that his engagement, thus expressed, did not go beyond the assumption of hospital care and treatment for the plaintiff, but the language used in the various conversations is susceptible of broader meaning and interpretation. The correct interpretation produces an issue of fact for a jury to determine.

The Court, therefore, holds that the conversations are competent upon the question of the liability of the defendant Wood, and hence the judgment of nonsuit is

Reversed.