CLARKSON, J., dissenting.
Civil actions to recover damages for alleged negligent injuries, by consent consolidated and tried together, as the two actions arise out of the same state of facts. *Page 309 
William Hood, while driving a truck along the Smithfield-Angier highway on the night of 18 February, 1939, negligently ran into the rear of a wagon in which the two plaintiffs were riding and injured both of them. Hood was employed as a handy man around the defendant's store and was the regular driver of the delivery truck which he was using on the night in question. At the conclusion of the day's work, Hood drove the defendant's truck to Smithfield, there drank some liquor, and was on his way home when the accident occurred. He was drunk.
It is in evidence that Hood had customarily used the defendant's truck in going to and from his home; that he lived about three miles from the defendant's store; that he regularly kept the truck in his yard at night, and this with the knowledge and consent of the defendant; that the store furnished the gas and oil for the truck, and "there was usually enough in there for him to go home in the evening and come back in the morning"; that no deductions were made from his salary for the use of the truck; that Hood's use of the truck in going to and from his home was purely a matter of accommodation and gratuity to him, and that the defendant in no way benefited therefrom. "There was plenty of parking space at the store to keep the truck," where the other trucks were kept. "It was not more protected than it would have been down at the store." Hood had been keeping the truck in his possession at night for five years. "That storage place was known to Mr. Beasley," says the defendant's bookkeeper. "I never did get any instructions to change the storage place. I have known Hood to make deliveries on his way home." No deliveries were made on the night of the accident. The truck was empty at the time. The bookkeeper further testifies: "Hood's employment was driving that truck. After he finished he was permitted to go home in the truck and come back to his work in the morning. The use of the truck after the store closed in going to his house was just purely a matter of permission and accommodation to him. . . . The use of the truck in going to and from his home was not for the accommodation of the store, but for William Hood's sole and single personal accommodation."
At the close of plaintiffs' evidence the defendant moved for judgments of nonsuit. Overruled; exception. The defendant offered no evidence, but relied upon the testimony of his bookkeeper as offered by the plaintiffs.
From verdicts and judgments for plaintiffs, the defendant appeals, assigning error.
The single question presented by the appeal is the sufficiency of the evidence to carry the cases to the jury.
The plaintiffs contended with quite good fortune in the court below that Hood's use of the truck under the circumstances was such as to warrant the inference that it was being driven to his home for storage or safe keeping during the night; that he was, therefore, about his master's business at the time of the injury, and that plaintiffs are entitled to recover on the theory of respondent superior.
It is true the defendant's bookkeeper is led to speak of Hood's yard as a storage place for the truck at nighttime, albeit there was plenty of room at the store where the other trucks were kept. In view of the same witness' positive testimony that Hood's use of the truck after closing hours in driving to his home was not for the benefit of the defendant but for "Hood's sole and single personal accommodation," we think it would be somewhat chimerical to say the truck was being operated for and on behalf of the defendant at the time of the collision. The compelling facts speak louder than the suggested inference. Harrison v. R. R., 194 N.C. 656,140 S.E. 598. There was no more protection for the truck in Hood's yard than at the defendant's store. The same stars shine at both places.
It is conceded that unless Hood was engaged in the work of the defendant "at the time of and in respect to the very transaction out of which the injury arose," the plaintiffs are not entitled to recover. Liverman v.Cline, 212 N.C. 43, 192 S.E. 849; Van Landingham v. Sewing Machine Co.,207 N.C. 355, 177 S.E. 126; Jeffrey v. Mfg. Co., 197 N.C. 724,150 S.E. 503; Tyson v. Frutchey, 194 N.C. 750, 140 S.E. 718; Grier v. Grier,192 N.C. 760, 135 S.E. 852; Reich v. Cone, 180 N.C. 267,104 S.E. 530.
It is elementary that the master is responsible for the tort of his servant which results in injury to another when the servant is acting in the course of his employment, and is at the time about the master's business. D'Armour v. Hardware Co., 217 N.C. 658; Barrow v. Keel,213 N.C. 373; Roberts v. R. R., 143 N.C. 176, 55 S.E. 509. It is equally well established that the master is not liable if the tort of the servant which causes the injury occurs while the servant is acting outside the legitimate scope of his authority, and is then engaged in some private matter of his own. Tribble v. Swinson, 213 N.C. 550,196 S.E. 820; Parrish v. Mfg. Co., 211 N.C. 7, 188 S.E. 897; Buckenv. R. R., 157 N.C. 443, 73 S.E. 137.
As a general rule the servant is not in the course of his employment while going to and returning from his work. This is essentially his own task. See Bray v. Weatherly Co., 203 N.C. 160, 165 S.E. 332, and cases there cited. *Page 311 
At present we are not concerned with a case where the servant uses the master's car in traveling to and from his work as a part of his compensation or in furtherance of the master's business. Nor are we confronted with a case where such use of the master's car is for the benefit of the master as well as the servant. Williams v. R. R., 190 N.C. 366,129 S.E. 816. A fair interpretation of the record reveals a case in which the servant is permitted to use the master's truck in going to and from his home purely as a matter of accommodation to the servant. It is not the policy of the law to extent the legal relationship of master and servant, with its reciprocal duties and liabilities, to cover such a case. The gratuitous and permissive use by Hood of the defendant's truck in traveling back and forth between his home and place of work, under the circumstances disclosed by the record, is not sufficient to warrant the inference that such use of the truck became by implication a part of the contract of employment. Distributing Corp. v. Drinkwater, 81 F.2d 200.
It was said in Hunt v. State, 201 N.C. 707, 161 S.E. 203, that "the employee is in the course of employment if he has a right to the transportation, but not if it is gratuitous, or a mere accommodation."
A careful perusal of the whole record impels the conclusion that Hood's use of the defendant's truck on the night in question was for his own purposes, first, in going to Smithfield, and, second, in returning home.Wilkie v. Stancil, 196 N.C. 794, 146 S.E. 296. The defendant had no control over him at the time. Hood was his own master while driving home. This defeats recovery on the theory of respondeat superior. Martin v. BusLine, 197 N.C. 720, 150 S.E. 501. The doctrine is inapplicable where there is no superior to respond. Standard Oil Co. v. Parkinson, 152 Fed., 681.
The plaintiffs stress the statement of the defendant's bookkeeper that the truck was in Hood's care at night, "and if anything should have to be hauled or delivered after the store was closed, we could get in touch with him and he would do it." He added, however, that if Hood had ever been called after closing hours, he knew nothing of it. "Not in all the time I worked there did I ever know Hood to be called on during the night. He was simply working there, and we all felt, if an emergency arose, we were liable to be called on." This evidence, in its entirety, expresses no more than a sense of loyalty on the part of all the employees of the defendant. It is to be commended rather than held for liability. It does not even carry the suggestion that Hood had the truck in order that he might be accessible after closing hours or at nighttime. Thus, on this record, to say that Hood was acting in the course of his employment at the time of the injury would be to tax the generosity of *Page 312 
the defendant, and place the law at variance with kindly impulses and generous treatment.
Speaking to a similar situation in Gewanski v. Ellsworth, 166 Wis. 250,164 N.W. 996, Rosenberry, J., delivering the opinion of the Court, said: "While it is true that fair and generous treatment on the part of the master is likely to produce a corresponding sense of loyalty on the part of the servant, it cannot be said that such treatment of a servant by a master in any way promotes or facilitates the master's business in a legal sense. It is to the benefit of both master and servant that their relationship should be pleasant and harmonious, but the effort of the master to accommodate and assist the servant does not bring within the scope of the master's employment acts of the servant otherwise without such scope."
It is not suggested that plaintiffs are entitled to recover on any other theory. There is no evidence that Hood was a reckless driver or that his drinking was known to the defendant. Taylor v. Caudle, 210 N.C. 60,185 S.E. 446.
There was error in overruling the defendant's motion for judgments as in cases of nonsuit.
Reversed.